UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH STRIPLIN,

                                        Plaintiff,

                    -vs-

DOCTOR JOHN W. ALVES, Nurse NORTHRUP,
Nurse BENNETT, Nurse DINARDO                         10-CV-06190-CJS

                                        Defendants.          DECISION and
                                                             ORDER

_____

INTRODUCTION

Joseph Striplin ("Plaintiff"), a prison inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS") has filed a *pro se*

complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his federal

constitutional rights by denying him appropriate medical care.  Now before the Court is

Defendants' Motion for Summary Judgment. [#14].  For the reasons that follow,

Defendants' motion is granted and this action is dismissed.

BACKGROUND

At all relevant times Plaintiff was housed at Elmira Correctional Facility ("Elmira"),

where Defendants were employed as medical staff.  More specifically, John Alves, M.D.

("Alves") was employed as a physician, Jill Northrup, NP ("Northrup") was employed as

a nurse practitioner, and G. Bennett ("Bennett") and Rebecca DiNardo ("DiNardo") were

employed as nurses.    On January 4, 2007, Plaintiff attempted to commit suicide by

1

taking fifty-five Flexeril pills.[1]  *See*, Northrup Decl., Ex. A.  Plaintiff was found

unresponsive on the floor of his cell, with two lumps on the right side of his forehead,

and scrapes on his elbows,  which he apparently sustained by falling to the floor.

Unaware that Plaintiff had taken Flexeril, and suspecting that he had overdosed on

narcotics, medical staff injected him twice in the arm with Narcan, a medication which

reverses the narcotic high and increases consciousness in the patient. Alves Decl. at ¶

7.[2]  Following the Narcan injections, Plaintiff became more alert and oriented, and was

able to provide his Department Identification Number ("DIN").

Two days later, on January 6, 2007, Plaintiff told a nurse that he had attempted

to kill himself by taking 55 Flexeril pills.  Plaintiff denied any suicidal ideation at that

time. Northrup Decl. Ex. A.  The nurse notified a doctor and the facility mental health

staff.  There is no indication in the medical record that Plaintiff complained of pain or

paralysis in his arm on January 6th.[3]

On January 8, 2007, apparently around 6:30 am, while Bennett was on sick-call

rounds, Plaintiff told her that he had tried to kill himself on January 4th by taking 55

Flexeril pills.  Northrup Decl., Ex. A.  Plaintiff further told Bennett that he was unable to

move his right arm.  *Id*.  Bennett recorded Plaintiff's complaints and made a mental

---

[1]Flexeril is a brand of cyclobenzaprine, a prescription muscle relaxant. See,
http://www.mayoclinic.com/health/drug-information/DR600491.  It is unclear how Plaintiff obtained the pills.

[2]Medical staff drew Plaintiff's blood for analysis and sent it to the lab, however the lab indicated
that the blood had to be re-drawn, because staff had used the wrong type of tube.  However, Northrup
determined that the blood test would be invalid at that point, since Plaintiff had already been given Narcan.
See, Northrup Decl., Ex. A.  It does not appear that this incident has any bearing on Plaintiff's claim.

[3]In opposition to summary judgment, Plaintiff alleges that he did complain to DiNardo of arm
paralysis on January 6th.

health referral, based on the claimed suicide attempt. *Id.*  Later that day, at

approximately 8:00 pm,  Plaintiff told DiNardo that he was having "severe arm pain."

Northrup Decl., Ex. A.  DiNardo had Plaintiff taken to the infirmary, where she observed

that he was neither grimacing nor sweating. *Id*.  In addition, Plaintiff denied having any

pain at that time. *Id*.  DiNardo took the radial and brachial pulse in Plaintiff's right arm.

Plaintiff told DiNardo that his right arm was "dead," but DiNardo observed that Plaintiff

moved the arm "when no one is looking at him." *Id*.  DiNardo nevertheless scheduled

Plaintiff for a follow-up with a nurse practitioner or doctor. *Id*.

On January 11, 2007, Plaintiff complained to Bennett that he was having "terrible

arm pain." Northrup Decl., Ex. A.  It appears that Plaintiff indicated that he was unable

to move his arm or make a muscle or fist, but Bennett recorded that he was "witnessed

moving [his] arm." *Id*.  Bennett apparently consulted with Northrup, who indicated that

she did not need to see Plaintiff, since there was no "medical documentation of any

physical issue." *Id*.

On January 12, 2007, at approximately 5:30 pm, Elmira medical staff were

notified that Plaintiff "fell out."  Northrup Decl., Ex. A.[4]   Plaintiff was unconscious,

unresponsive, and sweating profusely. *Id.*  Staff attempted to revive Plaintiff with an

ammonia capsule, which prompted him to open his eyes, but he remained "non-verbal."

*Id*.  Medical staff then had Plaintiff transferred by ambulance to an outside hospital,

Arnot Ogden Medical Center ("Arnot Ogden"). *Id*.  The following day, Arnot Ogen staff

notified the Elmira medical staff that Plaintiff's right arm was "flaccid" and that he was

---

[4]Plaintiff's original Complaint [#2] in this action appears to indicate that he passed out while returning from the chow hall.

awaiting an MRI.  There is no indication, though, that the Arnot Ogden staff explained why Plaintiff had been unconscious or unresponsive. *Id*.  Subsequently, Arnot Ogden notified staff at Elmira that they had performed MRI and EMG testing on Plaintiff, for "[right] arm flaccidity and syncopy." *Id*.

Plaintiff was subsequently diagnosed and treated as having "severe proximal brachial plexus injury."[5] Northrup Decl., Ex. A.  On February 5, 2007, Plaintiff was evaluated at St. Joseph's Hospital, and the evaluation report indicates, in pertinent part, "There is a very nebulous history in terms of what actually occurred to his right upper extremity to produce this profound injury.  He [Plaintiff] reports that he was in Arnot Ogden medical Center for two weeks where they had him on Percocet which was working to relieve his symptoms, however, he now reports that his pain is increasing in intensity without improvement with percocet." *Id*.  The same report further stated: "Patient with profound brachial plexus injury either at the cord or root level.  Cannot imagine a root injury without high impact injury." *Id*.

On or about January 28, 2010, Plaintiff commenced this action in the U.S. District Court for the Southern District of New York, against Alves, Northrup, Bennett, and other "persons known and unknown who hire them for correctional service." (Docket No.

---

[5]The Mayo Clinic describes such injury as follows:  "A brachial plexus injury is an injury to the brachial plexus — the network of nerves that sends signals from your spine to your shoulder, arm and hand. A brachial plexus injury occurs when these nerves are stretched or, in the most serious cases, torn. This happens as result of your shoulder being pressed down forcefully while your head is pushed up and away from that shoulder.  Brachial plexus injuries are common in contact sports, but they frequently result from auto or motorcycle accidents or falls. Babies sometimes sustain brachial plexus injuries during birth. Other conditions, such as inflammation or tumors, may affect the brachial plexus."
http://www.mayoclinic.com/health/brachial-plexus-injury/DS00897

[#2]).[6]  The complaint alleged that the defendants violated Plaintiff's 8th Amendment rights, and that his "arm, chest, thigh and leg [were] permanently injured by the defendants," who "denied and refused [him] all physical aid and medication or aid to his injuries for approximately three (3) days." *Id*.  The complaint indicated that after he took "50 or 55" flexeril pills, Elmira medical staff "sadistically left him in his cell for three days," which resulted in his arm being paralyzed.  Plaintiff further alleged that he was "set upon by a sadistic [unnamed] nurse" while he was unconscious. *Id*.  Plaintiff indicated that he had passed out due to pain from his arm, and that his injury, which Arnot Ogden staff diagnosed as "brachial plexus injury," was caused by the injections of Narcan with a hypodermic needle, and that Defendants were attempting to cover up the fact that they had "stabb[ed] a nerve in the arm or neck." *Id*.

On August 3, 2010, Plaintiff filed an Amended Complaint [#8], again, naming Alves, Northrup, and Bennett as defendants, as well as "Jane Doe, nurse."  The Amended Complaint names Defendants in their individual and official capacities and seeks money damages.  The Amended Complaint reiterates the prior allegations, and specifically alleges that Plaintiff's arm paralysis was caused by the injections of Narcan. The Amended Complaint further contends that Plaintiff was "denied medical treatment" after he began complaining about  his arm, and that it was incorrect to inject him with Narcan, since he had not taken heroin.  The Amended Complaint purports to state claims under the Due Process and Equal Protection Clauses.  However, the Court liberally construes the *pro se* pleading to raise the strongest argument that it suggests,

---

[6]The body of the complaint also indicates that Plaintiff is attempting to sue "all inmate medical staff."

which is an Eighth Amendment Deliberate Indifference claim.

On October 19, 2010, DOCCS advised the Court's Pro Se Clerk's Office that the name of the John Doe Nurse was Rebecca DiNardo. At that time, pursuant to an earlier Order of this Court, the Amended Complaint was deemed amended to include DiNardo as a defendant. *See*, Order [#9] at p. 2.

On January 21, 2011, Defendants filed the subject motion for summary judgment [#14].[7]  In support of the application, Alves, Northrup, and DiNardo have submitted affidavits, along with Plaintiff's Ambulatory Health Record covering the relevant period. Alves indicates, in pertinent part, the following facts: 1) it was medically appropriate to inject Plaintiff with Narcan; 2) Narcan is injected on the outside of the arm and "would not cause the brachial plexus injury located in Plaintiff's armpit area"; 3) Alves' involvement with Plaintiff's medical care was limited to ordering blood work on January 4, 2007, and to approving a mental health referral; 4) Alves was not aware of Plaintiff's arm injury until after January 12, 2007, when Plaintiff was sent to Arnot Ogden. Alves Aff. [#17].  Northrup indicates that on January 11, 2007, when she advised Bennett not to treat Plaintiff's arm, she had no indication that he had an arm injury, since there was no documentation of such an injury and Plaintiff allegedly was able to move his arm, and she did not believe that he had "a medical injury." Northrup Aff. [#18].  DiNardo's affidavit  indicates that on January 6, 2007, Plaintiff told her that he had attempted suicide, and she referred him for mental health treatment.  DiNardo Aff. [#28].  Defendants further contend that the official capacity claims against them

---

[7]Defendants provided Plaintiff with the Notice to Pro Se Litigants as required by Local Rule of Civil Procedure 56.2. (Docket No. [# 16] ).

must be dismissed, and that any claim against DiNardo is time-barred, because she was not identified as a defendant until more than three years after the events at issue, which occurred in January 2007.

In response to Defendants' motion, Plaintiff filed an affidavit [#30] in which he asserts the following facts: 1) after reviving him with Narcan, Defendants left him unconscious in his cell for three days; 2) he told DiNardo on January 6, 2007 that his arm was paralyzed, and she advised him to request sick call; 3) the following day, he requested emergency sick call and was seen by a non-party nurse; 4) on January 8, 2007, he twice complained to nurses about his arm, and was told that he was being scheduled to see a doctor; 5) on January 11, 2007, he went to the infirmary and told Bennett that his arm was paralyzed and painful, but after Bennett conferred with Northrup, she told him that there was nothing wrong with his arm; and 6) on January 12, 2007, he was taken to Arnot Ogden, and subsequently treated for brachial plexus injury. Pl. Affidavit [#30].  Plaintiff further states that "an expert opinion should be obtained" from the surgeon who treated him, apparently concerning the cause of his brachial plexus injury, although, as discussed earlier, the medical notes do not express an opinion concerning the cause of the injury, except to say that it would involve injury to the spinal cord or nerve root, and that a nerve root injury would require a "high impact injury."  Plaintiff further expresses his own opinion that, "It is believed that the Narcan injections were the cause of my right arm being paralyzed." Pl. Aff. at p. 3; *see also, id*. ("I remember being asked by Dr. Huang if I was stabbed, as if the injury was consistent

with maybe a needle stabbing.")[8]

ANALYSIS

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  To do this, the

---

[8]Plaintiff does not indicate that Huang told him that brachial plexus could be caused  by a hypodermic injection in the arm, and Alves has stated that such an injury would not have been caused by the Narcan injection.

non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party ." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(e).  Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

### *Official Capacity Claims*

Under the Eleventh Amendment, State officials can be sued in their official capacities for injunctive relief, but not for money damages. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir.2009) (noting that " *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), holds that in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment," but that such immunity may be waived or

abrogated in a particular case). Since Plaintiff is only suing for money damages, the official capacity claims must be dismissed.

### Claims against DiNardo

The statute of limitations for claims under 42 U.S.C. § 1983 is three years, and Plaintiff identified DiNardo as a defendant more than three years after the complained-of events occurred in January 2007.  Therefore, any claims against DiNardo do not relate back. *See, Perez v. New York City Police*, 234 F.3d 1262, No. 00-0016, 2000 WL 1715248 at *1 (2d Cir. Nov. 13, 2000) ("Perez's failure to name the 'Doe' defendants by their proper names within the applicable statutes of limitations-three years for §§ 1983 and 1985 and one year for § 1986-is fatal to his claims. *See Tapia-Ortiz v. Doe*, 171 F.3d 150, 151-52 (2d Cir.1999). '[E]ven when a suit is brought by a pro se litigant, an amended complaint adding new defendants [cannot] relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.' *Id*. at 152 (internal quotation marks omitted)").  Accordingly, DiNardo is entitled to summary judgment.[9]

### Eighth Amendment Medical Claims

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well-settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. *See e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).  Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations

---

[9]For the reasons discussed below, DiNardo would also be entitled to summary judgment on the Eighth Amendment claims in any event.

10

is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).

An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir.

2004).

Plaintiff alleges that Defendants violated his Eighth Amendment rights in

connection with his medical treatment, and the legal standard for such claims is clear:

In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.

Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate

medical care by prison officials to successfully establish Eighth
Amendment liability.  An official acts with the requisite deliberate
indifference when that official knows of and disregards an excessive risk
to inmate health or safety, a state of mind equivalent to the familiar
standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citations and internal

quotations omitted).  Courts have repeatedly held that disagreements over treatment do

not rise to the level of a Constitutional violation. *See Chance v. Armstrong*, 143 F.3d

698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper

treatment does not create a constitutional claim.").  Similarly, negligence constituting

medical malpractice, without more, will not establish a constitutional claim. *Id.* (citation

omitted).

Here, at the outset, there is no indication that Alves was personally involved in

any of the medical decisions about which Plaintiff complains.  Accordingly, Alves is

entitled to summary judgment.

Additionally, there is no evidence, beyond Plaintiff's conclusory allegations, that

the injections of Narcan played any part in his injury.  The evidence appears to indicate

Plaintiff's injury occurred when he fell and not as a result of the injections.  Also,

considering the circumstances of the injections, which were in response to an

emergency medical situation caused by Plaintiff's attempted suicide, the treatment did

not recklessly put his health in danger.  To the contrary, Alves's uncontroverted affidavit

indicates that it was medically appropriate to give Plaintiff Narcan.

The remaining aspect of Plaintiff's claim concerns the delay between the time

that he began complaining about his arm and the time that he was sent to Arnet Ogden.

However, at most those allegations indicate a negligent failure to diagnose, which is not

12

actionable under the Eighth Amendment.  There is no indication that either Northrup or Bennett was aware that Plaintiff had a brachial plexus injury requiring treatment.  To the contrary, the medical notes indicate that, although Plaintiff was complaining that his arm was paralyzed, they did not believe him because he was able to move his arm.  For example, DiNardo reported that, although Plaintiff claimed that his right arm was "dead," she observed him moving the arm when it appeared that he did not think anyone was watching him, and Northrup and/or Bennett apparently relied on DiNardo's note. See, Northrup Decl., Ex. A, medical note dated January 11, 2007.  Consequently, Plaintiff at most has alleged negligence, which is not actionable under 42 U.S.C. § 1983 as an Eighth Amendment medical claim.

## CONCLUSION

Defendants' motion [#14] is granted, and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: Rochester, New York
        November 29, 2011

ENTER:

 /s/ Charles J. Siragusa
 CHARLES J. SIRAGUSA
 United States District Judge

13